May it please the Court, this is a fair use case. The statute calls for the Court to consider four non-exclusive factors. In this case, the District Court erred in its analysis of the four factors constituting the fair use defense, and it erred in its application at the pleading stage on a motion to dismiss. Moreover, the appellee's position would improperly place the burden of proof on the fourth factor of the fair use defense on the plaintiff, and would also constitute an improper application of collateral estoppel issue preclusion. For these reasons and more, the District Court case and decision must be reversed. A plaintiff in a copyright infringement case is not required to plead each and every factor and sub-factor of the affirmative defense of fair use. Here, the District Court erred in requiring that the appellant plead that the defendant's use was in bad faith or for commercial purposes, R.O.A. 138. It was also an error for the District Court to require that the appellant plead that the appellee's use actually caused a potential or actual loss in book sales as a result of the tweets in this case, R.O.A. 142. The fair use factors are not, strictly speaking, elements of a defense. Instead, they are weighing tests for the court to consider. It's possible for any particular factor or sub-factor to weigh in favor of fair use, and yet fair use overall does not obtain. For example, on the first factor, namely the purpose and character of the use, one of the sub-factors for the courts to consider is whether the use was commercial, which generally weighs against the finding of fair use, or non-commercial, which generally weighs in favor of finding of fair use. But it's possible for a use to be considered non-commercial, and yet fair use overall does not obtain. One significant example is the Veik case. In Veik, a majority of the en banc panel in the Fifth Circuit determined that the work at issue was not eligible for copyright protection. But Judge Wiener's dissent, in which five other circuit court judges joined, including Your Honor Judge King, determined that fair use would not have applied even though the use was considered to be non-commercial. Courts rarely grant motions to dismiss on the basis of fair use. The bar is high. It is nothing in the complaint that speaks to Apelli's use as being non-commercial. On the commercial sub-factor... How on, I mean, just explain to me how it could plausibly be commercial. It's a soft high school softball team saying, you know, trying to motivate the softball team. How's that commercial? Thank you, Your Honor. So the district court determined that the use was clearly meant to inspire young high school softball athletes and color guard members. But this can't constitute non-commercial use as a matter of law because the appellant uses his works in the same context and for the same purpose. More specifically, the appellant uses his works... The question isn't the question whether the softball team was using it commercially, as in were they trying to make money off of it? Were they trying to... You know, there are cases that say, well, you don't maybe need to make money, but it enhances your reputation. But how is that possible here? A reasonable inference can be drawn that the appellee's use was commercial. The Supreme Court has made it clear that the monetary gain is not the sole criteria. Right, so tell me then how it was... Just explain to me how it was benefiting the softball team. The appellee's use could be considered commercial because it was an attempt to enhance its reputation in an effort to garner tweets and retweets and likes, which is a direct and measurable benefit. The appellee's use could be considered commercial because there was some attempt at gaining a monetary gain, even if it was indirect and didn't actually obtain in the long run. You agree clearly if a coach had just read this in the locker room, would you agree that's not commercial? Well, that's, Your Honor, pointing out a situation similar to what happened in Worthington. Of course, in Worthington, the summary judgment was granted, and it was only after evidence was on the record that that was actually the use that was made. But what I'm getting at, you're saying it's the social media aspect because I... What would you say if the coach just read this right before, you know, go out there and get them? Your Honor, it's... Even that you think is commercial? It's possible that it might be, but that is a very different situation to where we sit, which is a commercial, excuse me, a social media use, which is far from traditional mediums of education. There is also case law that, you know, driving traffic, solely driving traffic to one social media page constitutes a commercial use. This is the Comerica Bank and Trust NAV Habib case. Right, of a high school, but of a non-profit entity. Not in that case, Your Honor. Right, that's... I mean, I get where a business can benefit. It's a commercial thing to increase traffic to their Twitter account, but a girls' softball team, it's enhancing its reputation to post an inspiring message. Well, another thing I'd like to just quickly point out, Your Honor, is that it's the purpose and character of the use, right? So to hold that the appellee's use for the same purpose and within the same context to which appellant uses his own works, to hold that that is a non-commercial use as a matter of law, would appear to improperly focus the inquiry of the purpose and character of the use to that of the user, which is not the appropriate inquiry. Wait, you don't have to consider who the user is? It's not that it's totally devoid or divorced from who the user is, but again, the proper focus is on the use, as is clear from the statute. And here are the users of a girls' softball team trying to inspire the team to go out and win. You're right, Your Honor, but again, it's the same exact purpose and context to which the appellant uses his works. On the commercial sub-factor, Your Honor, in particular, it generally may be impossible for a plaintiff to plead a commercial purpose, since a plaintiff may not know whether there is a commercial purpose. Here, it's reasonable for the court, as Your Honor has done so, to ask, was there a commercial purpose behind these tweets? As the appellee states, you know, context matters. If the court here today has no basis for finding whether the use is commercial or non-commercial, then the appellant must have an opportunity to discover whether such a purpose, commercial purpose, existed. The fact that the use was non-transformative in this case should weigh heavily against a finding of fair use. Here, transformative means something, creates something new and different or otherwise expands the original's utility. Here, again, looking at the Viet case, described transformative use as the key question in the purpose and character factor. And sister circuits have agreed that the transformative use sub-factor is the heart of the fair use inquiry. Yet, despite the significance of this transformative sub-factor, the district court's analysis of this was relegated to a single sentence, namely, the posts were mere photographs of the wind passage, nothing about them was remotely transformative. This is from ROA 132, excuse me, 138. On this last point, the appellant can certainly agree, but the fact that the district court spent so little time and had so little apparent regard for the significance of this, for this significant sub-factor should raise serious questions about the district court's fair use analysis overall. Turning to the fourth factor, namely, the effect of the use on the market for the work, fair use is an affirmative defense. The defendant bears the burden to demonstrate that the secondary use does not compete in a relevant market identified by the appellant. Without what evidence, because you're saying this should go to evidence, it shouldn't have been dismissed at the pleading stage, what, and there's a lot of these other cases I assume you're involved in for Mr. Bell? How many? In a handful of other cases, yes. Right. And so some of them have gone to, what type of evidence would be helpful on this fourth factor if we reversed and said it should go through discovery? Well, we would look at what the actual harm is to not only appellants, all of appellant's markets, so the harm to the market for the win book, the market harm to the license. I mean, that's what you'd want to show. What type of evidence would show how tweets, I understand we don't just look at this particular tweet, but tweets by high school sports teams are impacting, what type of documents, what type of evidence, would it be expert testimony, how do you prove the impact? Expert testimony and documentary evidence of a decrease in sales. There may be testimony about an utter destruction of the market. The possible amount of increased sales? Free advertising. It's properly attributed, right? Right. Your Honor, this is something that the district court raised as a possibility. We don't, you know, even if that's true, that's only something that could be determined through the course of discovery, and, you know, the fact that the district court in this case looked at it in that way and sort of essentially flipped the motion to dismiss standard on its head and looked at this in a more favorable light to the appellee should again, should throw questions about the district court's judgment to the court here today. Well, the 12B standard is plausible, so give us a plausible scenario in which tweets by a high school sports team hurt your client financially. Well, the appellant has... You think all these softball players are going to go out and buy the book, but they said, oh, we can just tweet it instead? Well, we're looking, I mean, if you consider more than just the book sales, Your Honor, so we're looking... The t-shirts. T-shirts, but the license market in particular, the market for licensing this to users who are putting this online, and that is a market that's identified and alleged in the complaint. So budget-constrained high school sports teams are going to pay to license an inspirational message if they're not allowed to post it on social media, that's your plausible scenario? It's not only high school softball teams, it's anyone... Has your client ever licensed it to a high school team? To a high school team. Outside of litigation, I know there's been settlements in litigation, but I'm saying just someone just called up out of the blue and this coach said, I love what you wrote, I want to put it on social media, what can we pay you? Has that ever happened? I can't speak to high school, but I am aware that the appellant has licensed to other users at arm's length for use of the work online, and if we... But not... I mean, high school sports teams aren't out there throwing money around, they're lucky if they can buy enough bats and balls for these girls. Sure, but the idea that anyone in the world could use this, including high school softball teams, could affect the import, the significance of the use of this work in the context of someone else who would maybe be able to pay, have the wherewithal to actually pay a license fee for this work. There's no evidence on the record that appellee's use does not compete in a relevant market identified by the appellant. The appellee's position is that the appellant cannot allege any facts concerning any impact that the tweets had on appellant's book sales. This position and that of the district courts ignore the other markets identified by the appellant, including the license market, as we were discussing earlier. Nor can the appellee's introduction of the Worthington case help it here. First of all, it's not clear that the district court actually examined the Worthington case. Moreover, it would be improper for the court to look at deposition testimony from another case because they're not part of the record, they're not in the complaint, they're not attached to the complaint, they're not referred to in the complaint. In Worthington, the only issue was the effect of the secondary use on book sales. In fact, the Worthington case expressly did not consider the effect of the use on the Winn Passage. Therefore, collateral estoppel cannot be applied here to preclude the appellant from the issue of whether the use affected his market. Finally, the appellant's allegations would show market harm and an effect on the potential market for Appellant's Works. You know, here, I want to compare the district court case in the Western District of Texas to the Northern District, which is the issue here, which is the Lano and Crawford cases where Judge Albright presiding, the court determined that the fourth factor did not weigh in favor of the secondary user. And, you know, one of the allegations in the complaint in this case is that it's plausible and even probable that social media use of the Winn Passage became even more widespread. The incentive to purchase winning isn't normal or related merchandise could fall. Given the passage, it's reportedly the most moving section or otherwise. And the district court in this case takes, sort of dismisses that, says could fall. But this is, this is nearly verbatim to the language that Judge Albright's decision uses to, you know, against the secondary user. On this fourth factor, you seem to be saying we view it as whether anyone out there in the world would be using this on social media would that harm his business. I mean, don't we have to look at it in the context? I know not just of this particular user, but of public school or school athletic teams, because otherwise you could say take fair use in a classroom, right? That's a common fair use where a professor reads a passage out of a book in class. And those are generally considered to be fair uses. Because you look at it, is there an economic effect from college professors doing that? And not really. You would view it as was there an effect from everyone in the world just taking this without paying a license and reading passages. It's possible, Your Honor. I mean, we're not, we're not foreclosing the idea that we can segment a market or, you know, entirely dismiss that there may be separate markets. But we're not, you know, we're not at that stage yet. And we have, we do offer licenses for use of the work. We sell these products, Appellant does. And here we need an opportunity to demonstrate the use of this nature can destroy those markets. I mean, this is nearly, well, it's very similar to the Veet case. In Veet case, you've got a non-transformative, non-commercial use that was published online on a website for free. And in that case, Judge Wiener's dissent, with again, Judge King joining, would have destroyed the market for that kind of work. All right. You have five minutes for rebuttal. We'll hear from Ms. Walker. May it please the Court. I'm Meredith Walker on behalf of Eagle Mountain Saginaw Independent School District. The district court correctly dismissed Dr. Bell's claims for direct, contributory, and rewarding the school district attorney's fees. The court should affirm the district court's decision in full. Turning to the issue of whether the court, the district court, properly dismissed this matter at the 12B6 stage, the district in its briefing cited the court to four or five different cases where a 12B6 was used to dismiss on the basis of fair use. While the school district recognizes that fair use is absolutely an affirmative defense, it's not a typical affirmative defense because what the court's going to do is they're going to look at each and every element and they're going to weigh that because fair use is an equitable test. It's a balancing test. And so when you look at it from that standpoint, the court can absolutely look at fair use on the basis of a complaint and dismiss under Rule 12B6. That's particularly true here because Dr. Bell, in his complaint, raised fair use affirmatively. He pleaded facts to overcome the fair use defense, but he didn't succeed in doing so. And so not only did he raise it, but at the district court level, he never told the court it was improper to dismiss it at the 12B6 stage. Instead, he argued why fair use did not apply. And then when- He filed a more bare-bones complaint that just said the softball team copied my stuff on a tweet. That's copyright. I hold the copyright. That's infringement. Give me money. The end. Then there probably wouldn't be a basis for fair use at Rule 12. There's all this stuff in the complaint, though, that the district court relied on. Absolutely. It did. But when you look at the fourth factor, which is the market value and whether it's been harmed, I think it's important for the court to consider that because the school district contends that it was a non-commercial use, for your point, Judge Costa, we've got a high school color guard. The plausibility that they're tweeting this in order to enhance their reputation to make money as a softball team and a color guard team, it's not plausible, particularly because when you look at the record on appeal at 61, it absolutely was attributed to Dr. Bell. So if anybody's reputation is going to be increased, it's the fact that they attributed it to Dr. Bell. But going back to the fourth factor, this court, the panel decision in the Veek case specifically stated when the use of copyrighted work is non-commercial, defeating a fair use defense requires proof either that the particular use is harmful or that if it should become widespread, it would adversely affect the potential market for the copyrighted work. And the court quoted Sony. While we recognize that the en banc court then reversed the panel's decision, the fact is that the en banc court did not consider fair use. But Judge Weiner in his dissent, which Judge King joined in, went back and made that exact same point and had that exact same quote. When as with Veek's infringing activity here, the use of a copyrighted work is non-commercial, the ability to defeat an infringer's affirmative defense of fair use requires, and it went on to talk about what you have to show. Well, the language in and of itself to defeat an infringer's affirmative defense shows that the burden was on Dr. Bell. On the fourth factor, because this was a non-commercial use. And there's nothing in the complaint for the court to draw on to show that there was any market harm or that it was harmful, that the factual allegations were just not there. And on that basis alone, the fourth factor, which Dr. Bell bore the burden on, weighs in favor of the school district. But going back to the non-transformative nature and the purpose and character and whether this is commercial or non-commercial, again, the school district isn't contending that it was a transformative use. When you look at page 61, it clearly is a copy of the book. There was nothing transformative about that. That's what the district court found. But transformative use under Campbell is not absolutely necessary for purposes of finding fair use. Then the court's going to look at the other factors, such as commercialism and bad faith, although there is a question as to whether bad faith is still a factor. But when you look at that, Campbell specifically said other factors like the extent of its commerciality loom larger. And again, we're talking about a softball team that had 393 followers and a color guard that had 535 followers. So we're talking less than 1,000 Twitter followers. And this is football is king in Texas. We made that point in our brief. This is not a high school football team. This is a color guard team. This is a softball team that attributed the quote to Dr. Bell. This is just nothing commercial about this. It would take some very serious mental gymnastics to find that the high school color guard tweeted Dr. Bell's passage in order to enhance the reputation of the color guard, so more students would come to color guard and that they would rise their ranks. That doesn't even make money for the school district. And that somehow Dr. Bell referenced in his reply brief that the district received a B from the Texas Education Agency, but the Texas Education Agency looks at star scores and standardized testing. It doesn't even have to do with athletics. The gymnastics that it takes to get there on a commercial purpose is simply not plausible. And so then we're going to look at the other two factors, which are whether the nature of the copyrighted work, and there's two factors there, whether the work is expressive or creative and whether the work is published or unpublished. The work was clearly published, so the court's really going to focus on that first factor. And there's other case law out there that Dr. Bell has already brought forth that courts have decided that when they look at this second factor, they find that it weighs in favor of fair use. It's already widely publicized. So finding that it's that the second factor, the nature of the copyrighted work, weighs in favor of the district is consistent with the Worthington case. It's consistent with the Bell versus Moad case. Both of those, when the court looked at it, found that that factor weighs in favor of fair use. And then when you look at the amount and substantiality, the district court found that was neutral. And Dr. Bell took issue with that because he found, he argues that that factor should weigh in his favor, but the fact is that when you look at the quantitative analysis, we're talking about one page out of the 72-page book. And when you look at the qualitative analysis, the district court took Dr. Bell's pleadings on their face, as they should on a 12B6, and said, well, he does say that it's the heart of its work. And so when you balance the quantitative and the qualitative, he appropriately found, or the district court appropriately found, that that factor was neutral. So when you put all of those factors together and you follow Google, and Google says context matters and things need to change as technology changes, and when you consider that this is a high school softball team and a high school color guard, the factors absolutely weigh in favor of fair use here, particularly because the evidence just does, or I'm sorry, the factual allegations just did not support that Dr. Bell did or even tried to meet the burden on the fourth factor. For those reasons, the court should affirm the dismissal of Dr. Bell's claims. All right. Thank you, counsel. Mr. Mendel, you get the last word. How does your client find out that tweets like this exist? Internet searching. I just want to take a look at some of the case law regarding motion to dismiss and fair use. For cases that didn't dismiss or denied motions to dismiss, we see Riley v. Louder with Crowder, Pearson v. Do Stuff Media, Estate of Bar A v. Carter. These are all within the Fifth Circuit. The cases that the appellee cites where a motion to dismiss were granted on the basis of fair use were all transformative. We see Shelby v. DeVries, Oyewole v. Ora, Payne v. Courier Journal, even the Brownmark film case at the Seventh Circuit. There are other cases within the Fifth Circuit. Caner v. Smathers, American Institute of Physics v. Winstead, Faulkner v. Sony Pictures. These are all transformative use cases. What is the through line here? That where a motion to dismiss is granted, it's much more likely to be done when there's a transformative use, not when there's a non-transformative use. I'm going to talk a little bit about the appellee's position that the transformative use is entitled to very little weight in this case. That is a position that the appellee takes by virtue of language in the Campbell case. But keep in mind that the Campbell case is actually the case that introduced to fair use jurisprudence, the case law at least, the terminology, transformativeness. Moreover, as I mentioned earlier, the Viet case said that transformative use is the key question, the purpose and character of the prong. It's the heart of the fair use inquiry. Even in appellant's cases, in cases including ones involving appellant, namely Pacific Ridge Builders, which is attached to our primary brief here, the court in that case said that where the use is minimally transformative, the question of whether the use was commercial or not is entitled to less weight. That's not only in appellant's case. There's a case, Otto v. Hearst Communications, from the Southern District of New York in 2018 that applies similar reasoning. I also want to address the presumption briefly. First of all, to apply the presumption that appellee wants to apply here, it would require that the court determine as a matter of law that the use is noncommercial. We've already gone through that. Appellant vigorously disagrees that this is a noncommercial use. But even assuming this is a noncommercial use, read in context, the Campbell case abrogates presumptions of any nature, either commercial or noncommercial. Language such as the commercial or nonprofit educational purpose of a work is only one element of the first fair use inquiry. The mere fact that a use is educational and not for profit does not insulate it from a finding of infringement any more than the commercial character of the use bars a finding of fairness. Campbell also limited the Sony case to its particular factual circumstances. In Sony, the facts were a private, noncommercial time shifting in the home. In this case, we have anything but private. It's a very public social media post. So even if there's some presumption that survives from Sony after Campbell, the facts here are they don't support it. No presumption should apply. The Second Circuit has as recently as August, in the Andy Warhol case, said that they won't apply any burden shift on the fourth factor. It was unqualified with respect to commercial or noncommercial to the extent there's any doubt that they wouldn't apply a presumption in a noncommercial case. There's the Authors Guild v. Google case from 2015, which says that there's no presumption either way. So for the Fifth Circuit Court of Appeals to hold otherwise would at least appear to be discordant with the Second Circuit. Even if the Fifth Circuit wants to shift the burden to the plaintiff on the fourth factor where the use is noncommercial, it must be kept in mind that this is a fairly minimal burden to satisfy. The Sony court says, what is necessary is a showing by a preponderance of the evidence that some meaningful likelihood of future harm exists. The emphasis of some is in the original. This can be satisfied here. And again, we only need to look at the Viet case, at Judge Wiener's dissent in the Viet case, where a nontransformative, noncommercial use can destroy the market. In conclusion, the appellant has met any burden that it has here. All right. Thank you, counsel. The case is submitted.             Aye. Aye. Aye. Aye. Aye. Aye. Aye. Aye. Aye. Aye. Aye. Aye. Aye. Aye.                Aye, Aye. Aye. Aye. Aye. Aye. Aye. Aye. Aye. Aye. Aye. Aye. Aye. Aye. Aye.